UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS F. JOSEPH, | |
| Petitioner, | CIVIL ACTION NO. 3:25-cv-02428 |
| v. | (SAPORITO, J.) |
| WARDEN, PIKE COUNTY CORRECTIONAL FACILITY, | |
| Respondent. | |

MEMORANDUM

Francis F. Joseph, who is detained in the custody of United States Immigration and Customs Enforcement ("ICE") at the Pike County Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). He contends that his ongoing detention under 8 U.S.C. § 1226(c) is unconstitutional, and requests immediate release or a bond hearing. For the following reasons, the Court will order that Joseph be provided an individualized bond hearing within 21 days of this memorandum and order.

I. BACKGROUND AND PROCEDURAL HISTORY

Joseph is a native and citizen of India. He was admitted to the United States in 2000 on an H1B visa, and in 2004, he was granted lawful

permanent resident status. *See* (Doc. 10-2 at 4). In 2023, Joseph was convicted and sentenced to thirty months' imprisonment in the United States District Court for the District of Colorado on charges related to health care fraud. *See U.S. v. Joseph,* No. 1:21-CR-00083-RM (Doc. 149) (D. Colo. Jun. 5, 2023). He remained in Bureau of Prisons custody from June 1, 2023, through December 4, 2024. During that time, ICE issued Joseph with a Notice to Appear, charging him as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, *i.e.,* a crime of fraud or tax evasion resulting in a loss exceeding $10,000.00. *See* (Doc. 10-3). Joseph moved to terminate his immigration proceedings, but his motion was denied by an immigration judge, and his request for interlocutory appeal was denied by the Board of Immigration Appeals. (Docs. 10-6, 10-7).

Upon his December 4 release from the BOP, Joseph was detained by ICE and held at the Clinton County Correctional Facility ("CCCF"). On April 29, 2025, with his removal proceedings ongoing, he was transferred to the Pike County Correctional Facility ("PCCF"), where he remains today. *See* (Docs. 10-4, 10-5). On November 10, 2025, an immigration judge ordered Joseph removed to India and denied his

applications for withholding of removal and for relief under the United Nations Convention Against Torture. (Doc. 10-9). Joseph appealed that decision on December 6, 2025 (Doc. 10-10), and that appeal remains pending.

At this time, Joseph has been held in ICE pre-removal custody, pursuant to 8 U.S.C. § 1226(c), for more than 14 months.

## II. DISCUSSION

A district court may issue a writ of *habeas corpus* when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Thus, courts may consider *habeas corpus* petitions filed by immigration detainees who challenge their continued detention as unconstitutionally excessive. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018).

Section 236 of the Immigration and Nationality Act provides for mandatory pre-removal detention of individuals previously convicted of certain criminal offenses. *See* 8 U.S.C. § 1226(c)(1)(B) ("The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), A(iii), (B), (C), or (D) of this title."). Under this statute, an individual

detained under section 1226(c) may be released only if the Attorney General decides that the release is necessary to protect a witness and the individual is not a flight risk and does not pose a danger to society. *See id.*, § 1226(c)(2). Thus, "section 1226(c) does not give the Attorney General any authority to release these [individuals] on bond." *See Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473 (3d Cir. 2015) (citing *Demore v. Kim*, 538 U.S. 510, 521 (2003)).

In *Jennings v. Rodriguez*, 583 U.S. 281, 303-06 (2018), the Supreme Court held that the language of § 1226(c) authorized unlimited detention pending removal proceedings of an alien who is deportable based on their criminal activity, and that no implicit restraint on the duration of that detention can be read into the statute. *Jennings*, however, left open the possibility "that detention under § 1226(c) may violate due process if unreasonably long."[1] *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *see also Ojo v. Warden Elizabeth Det. Ctr.*,

---

[1] On January 23, 2026, the parties were directed to file supplemental briefs addressing the application of *Khalil v. President*, 169 F.4th 259 (3d Cir. Jan. 15, 2026), to this petition. Neither party disputes that the Court retains subject matter jurisdiction, given that the petition is a challenge to the petitioner's "prolonged detention," *see Khalil*, 164 F.4th at 277, rather than the removal proceedings themselves. *See* (Docs. 15, 16).

808 Fed. App'x 61, 65 (3d Cir. 2020) (per curiam).

To prevail on such a claim, "an alien must show that as applied in his or her case, application of the statute is so arbitrary and unreasonable that it constitutes an arbitrary deprivation of liberty." *Ojo*, 808 Fed. App'x at 65. The Third Circuit has adopted "a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable": (1) the duration of detention; (2) the likelihood that detention will continue; (3) the reasons for the delay; and (4) whether the alien's conditions of confinement are "meaningfully different" from criminal punishment. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-11 (3d Cir. 2020).

As the Third Circuit has recognized, "[t]he most important factor is the duration of detention." *German Santos*, 965 F.3d at 211. Joseph has now been in ICE pre-removal custody for 14½ months. Although perhaps a close call, we find that this duration of detention weighs in favor of granting the requested habeas relief. *See Nunez v. Oddo*, No. 25-CV-143, 2025 WL 2443437, at *4 (W.D. Pa. Aug. 25, 2025) (finding that detention of "just over [] 14 months" without a bond hearing "weigh[ed] strongly" in favor of granting habeas relief); *Davydov v. Doll*, No. 1:19-cv-2110,

2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (over 14 months); *Malcolm A.H. v. Green*, 403 F. Supp. 3d 398, 402 (D.N.J. 2019) ("14-plus months"); *Bah v. Doll*, No. 3:18-CV-1409, 2018 WL 6733959, at *7 (M.D. Pa. Oct. 16, 2018) (exceeding 14 months), *R. & R. adopted*, 2018 WL 5829668 (M.D. Pa. Nov. 7, 2018); *cf. Saint Jacques v. Dep't of Homeland Sec.*, No. 1:21-cv-1144, 2021 WL 4494623, at *2 (M.D. Pa. Sept. 30, 2021) (finding detention period of less than 14 months did not weigh in favor of habeas relief); *Dryden v. Green*, 321 F. Supp. 3d 496, 502–03 (D.N.J. 2018) ("just over a year").

The second factor, the likelihood that detention will continue, favors granting habeas relief. Joseph is appealing his removal order to the BIA, and expresses his intent to appeal to the Third Circuit if necessary.[2] The respondent argues that Joseph's removal order is "likely to become final within the calendar year," (Doc. 10 at 17), but the status of Joseph's appeal process supports habeas relief, even if the appeal may be resolved in less than a year.[3] *See German Santos*, 965 F.3d at 212 ("[Appeal to the

---

[2] Joseph also claims to be "pursuing multiple other collateral remedies" (Doc. 1 at 14), but he does not specify what those are or how they would entitle him to relief or lengthen his detention.

[3] For this reason, the respondent's argument that this factor "relies
*(continued on next page)*

BIA] could take months. And if the Board dismisses his appeal, he may petition this Court for review. That too would add months more in prison.") (citations omitted); *Ologbenla v. Lowe*, No. 3:25-CV-1351, 2025 WL 2375272, at *3 (M.D. Pa. Aug. 14, 2025); *Shonhai v. Lowe*, No. 3:24-229, 2025 WL 510975, at *5-6 (M.D. Pa. Feb. 14, 2025); see also *Suite v. Larose*, No. 25-CV-2613, 2026 WL 116424, at *2 (E.D. Pa. Jan. 15, 2026) (noting that the Third Circuit "averages approximately 8.5 months to dispose of an appeal") (citation omitted).

The third factor requires the court to consider the reason for the delay. The respondent states that Joseph's immigration proceedings have "moved forward at the normal rate for noncitizens who contest removability and apply for relief." There is no allegation of any delay caused by bad faith or improper conduct by any party. *See* (Doc. 1 at 14-15, Doc. 10 at 17-18). Therefore, this factor is neutral in the analysis. *See German Santos*, 956 F.3d at 212; *Ologbenla*, 2025 WL 2375272, at *3.

The fourth factor is whether Joseph's conditions of confinement

---

on unhelpful hypothesizing . . . and improperly requires litigants to argue to this Court the merits of their position at the administrative level," (Doc. 10 at 17), does not foreclose consideration in Joseph's favor. *See Shonhai v. Lowe*, No. 3:24-229, 2025 WL 510975, at *5-6 (M.D. Pa. Feb. 14, 2025) (addressing the same argument).

differ meaningfully from criminal punishment. In *German Santos*, the Third Circuit held that an immigration habeas petitioner's detention alongside convicted criminals at the PCCF was "indistinguishable" from criminal punishment. *See* 965 F.3d at 212-13. Joseph contends, and the government does not dispute, that he has been similarly detained among convicted criminals at the CCCF and PCCF.

In addition, Joseph, formerly a practicing physician[4], alleges that he suffers ongoing medical harm from his conditions of confinement. He describes himself as immunocompromised due to ulcerative colitis and diabetes, and alleges that he has 10-15 bowel movements per day and must wear adult diapers. At the CCCF, where he was held until April 29, 2025, he alleges that the conditions were unsanitary, and he developed toenail fungus, staph infections, and eczema "because of substandard care." At the PCCF, the prison allegedly provides "chucks" instead of diapers and will not provide a particular kind of insulin that Joseph believes he requires. He generally alleges that his various illnesses, in combination, represent a "ticking time bomb" based on the inadequate

---

[4] *See United States v. Joseph*, 108 F.4th 1273, 1278 (10th Cir. 2024); (Doc. 13-1 at 8-23).

treatment offered at the PCCF. *See* (Doc. 1 at 15-19).

The respondent did not specifically address Joseph's allegations about prison conditions, but accepts *German Santos*'s holding that the conditions at the PCCF were found "punitive as to immigration detainees," and thus weigh in favor of Joseph's entitlement to a bond hearing. *See* (Doc. 10 at 18). Despite the limited evidentiary record, this factor weighs strongly in favor of a bond hearing, particularly given Joseph's documented[5] medical issues. *See, e.g., Ibrahim*, 2026 WL 116489, at *5; *Maksaddzhon A. v. Pittman*, No. 25-CV-13734 (MCA), 2025 WL 3648710, at *3 (D.N.J. Dec. 17, 2025) (a detainee's medical needs are relevant to whether his conditions of confinement are "meaningfully different" from criminal punishment); *Malede v. Lowe,* No. 1:22-CV-01031, 2022 WL 3084304, at *7 (M.D. Pa. Aug. 3, 2022) ("Malede's

---

[5] The Court does not, as Joseph requests, take "judicial notice" of facts about his medical care based purely on his own allegations. *See* (Doc. 1 at 15); Fed. R. Evid. 201(b). However, Joseph offers supporting evidence for some of his claims, such as a request to staff dated May 28, 2025: ("I need my diapers. [B]een asking for 3 days in a row every shift. I have been wearing the same diaper for 3 days this is inhumane!"). The staff responded: "[R]eviewed, diapers delivered tonight, apologies and we will prevent this from happening again."). *See* (Doc. 1-1). He also attaches evidence indicating that he was prescribed Jardiance, and unspecified "fungal treatment" for toenail fungus, which were delayed indefinitely. *See* (Doc. 1-3 at 1-3). The respondent has not disputed these facts.

conditions of confinement also strongly favor a finding of unreasonableness, particularly in light of his medical concerns.").

However, the foregoing analysis does not entitle Joseph to immediate release. *See, e.g.*, *Van v. Oddo*, No. 3:25-CV-00322, 2025 WL 3492736 (W.D. Pa. Dec. 5, 2025); *Appiah v. Lowe*, No. 3:24-CV-2222, 2025 WL 510974, at *4 (M.D. Pa. Feb. 14, 2025) (finding that the court "cannot grant [immediate] release from custody," and is "limited to resolving whether [the petitioner] is entitled to an individualized bond hearing"); *cf. Tropskii v. Bondi*, No. 25-CV-3226, 2025 WL 3016518 (E.D. Pa. Oct. 28, 2025) (granting immediate release in a "novel" case where there was "no evidence that [the § 1226(c) detainee] was convicted of a crime," and therefore a bond hearing was by definition "not sufficient to accord [him] his due process rights").

Joseph has also filed motions requesting a "constitutional due process in-person hearing with an Article III judge" and a temporary restraining order enjoining the respondent from "detaining [Joseph] in violation of his due process rights." (Docs. 12, 13). Because Joseph will be afforded a constitutionally adequate bond hearing, the requested relief is

moot.[6] See Quinteros v. Sabol, No. 4:15-CV-02098, 2016 WL 6525295, at *1-2 (M.D. Pa. Nov. 3, 2016).

### III. CONCLUSION

Considering the applicable factors, Joseph has sufficiently shown that his ongoing detention has become unreasonable. Joseph must receive an individualized bond determination within 21 days, for which the government bears the burden of demonstrating by clear and convincing evidence that his continued detention is needed to prevent him from fleeing or harming the community. See German Santos, 965 F.3d at 213-14. An appropriate order follows.

Dated: February 23, 2026            *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States District Judge

---

[6] Joseph argues at length that he is not a flight risk or a danger to the community, and he may have intended to request that the Court, rather than an immigration judge, conduct a bond hearing. A district court may, in certain circumstances, make a bond determination based on its inherent power to enforce a writ of habeas corpus. See, e.g., Chiguano v. Lowe, No. 1:24-CV-02210, 2025 WL 3187161, at *4 (M.D. Pa. Nov. 14, 2025). Regardless, Joseph has not presented evidence that a bond determination by an immigration judge would be inadequate. See, e.g., Cahuec v. Soto, No. 25-CV-17389 (GC), 2025 WL 3524463, at *1-2 (D.N.J. Dec. 9, 2025) (denying preliminary injunctive relief premised on petitioner's "speculation" that a bond hearing by an immigration judge would not protect0 his due process rights).