**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

FRANCIS F. JOSEPH,
A# 073 035 843,

Petitioner,

v.

WARDEN PIKE COUNTY CORRECTIONAL FACILITY,

Respondent.

CIVIL ACTION NO. 3:25-cv-02428

(SAPORITO, J.)

## MEMORANDUM

The petitioner, Francis F. Joseph, is a noncitizen detained in the custody of United States Immigration and Customs Enforcement ("ICE") at Pike County Correctional Facility, an ICE detention facility located in Pike County, Pennsylvania. In December 2025, Joseph filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2441. On February 23, 2026, we granted the petition and ordered that he receive an individualized bond hearing within 21 days. Joseph has now moved to enforce our prior order granting relief, arguing that he was not provided with a constitutionally adequate hearing as we had ordered.

### I. BACKGROUND AND PROCEDURAL HISTORY

Joseph is a native and citizen of India. He was admitted to the

United States in 2000 on an H-1B visa, and he was granted lawful permanent resident status in 2004.

In 2023, following a jury trial in a Colorado federal district court, Joseph was convicted of two felony health care fraud offenses and sentenced to serve 30 months in prison. He was incarcerated in a federal correctional institution to serve this criminal sentence until December 4, 2024.

During this period of incarceration, federal immigration authorities initiated removal proceedings against him as an alien convicted of an aggravated felony—in this instance, an offense of fraud or deceit resulting in a loss exceeding $10,000—pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Upon his release from federal prison on December 4, 2024, Joseph was taken into custody by ICE for civil immigration detention. In April 2025, he was transferred to Pike County Correctional Facility, where he remains today.

On November 10, 2025, an immigration judge ordered Joseph removed to India and denied his applications for withholding of removal and for relief under the Convention Against Torture. On December 6, 2025, Joseph timely appealed that decision to the Board of Immigration

Appeals ("BIA"), where it remains pending.

On December 16, 2025, this court received and filed Joseph's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Joseph contended that his ongoing mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) was unconstitutional. At the time, he had been held in ICE pre-removal custody, pursuant to § 1226(c), for more than a year without having received an opportunity for a bond hearing.

On February 23, 2026, we granted Joseph's petition, finding that his ongoing detention under § 1226(c)—at that time, more than fourteen months without a bond hearing—had become unreasonably long, such that it constituted an arbitrary deprivation of liberty without due process of law. *See Joseph v. Warden*, No. 3:25-cv-02428, at *2–3, 2026 WL 497532 (M.D. Pa. Feb. 23, 2026), Doc. 18. *See generally German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020); *Ojo v. Warden Elizabeth Det. Ctr.*, 808 Fed. App'x 61, 65 (3d Cir. 2020) (per curiam). We ordered that Joseph be provided with an individualized bond hearing within 21 days, at which the government would bear the burden of demonstrating by clear and convincing evidence that his continued

detention was necessary to prevent him from fleeing or harming the community. *See* Doc. 19; *see also Joseph*, 2026 WL 497532, at *4.

Seven days later, on March 2, 2026, Joseph was brought before an immigration judge for a bond hearing. Following that hearing, the immigration judge issued a succinct written order summarily denying bond on the stated ground of "[f]light risk." Doc. 21-1.

On March 10, 2026, the court received and filed a pro se submission from Joseph, signed and dated by the petitioner on March 3, 2026, which we have liberally construed as a motion to enforce the court's prior judgment granting habeas relief. Doc. 23. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants). On April 3, 2026, the respondent filed his brief in opposition to the petitioner's motion to enforce, together with several exhibits in support. Doc. 33; *see also* Doc. 34. In addition, the court has considered a series of additional "supplemental" pro se submissions by the petitioner providing updated factual information and additional legal argument. Doc. 25; Doc. 26; Doc. 31; Doc. 35; Doc. 36; Doc. 37; Doc. 38; Doc 39; Doc. 40; Doc. 43; Doc. 44;

Doc. 48; Doc. 49; Doc. 50; Doc. 51; Doc. 52; Doc. 53; Doc. 54; Doc. 56.

## II. DISCUSSION

In his motion, Joseph contends that immigration officials have failed to provide him with a constitutionally adequate individualized bond hearing, and thus they have failed to comply with this court's prior order granting his petition for habeas relief. He states that, although he had previously received a copy of this court's order granting habeas relief one day earlier, he was not provided with *any* advance notice that his bond hearing would be held on March 2, 2026. He was verbally notified of the 1:00 p.m. hearing scheduled before an immigration judge that same morning, at approximately 11:30 a.m.[1] He attempted to contact his immigration lawyer, but his counsel was unavailable due to hearings in other client matters. As a result, Joseph was forced to appear before the immigration judge without a lawyer. Based on an audio recording and unverified transcript of the bond hearing, submitted into the record by

---

[1] We note that the record includes evidence that written notice of the March 2, 2026, hearing was mailed to the petitioner on February 24, 2026, addressed to Joseph "c/o Custodial Officer." It is unclear who received the notice or when, but Joseph states that he personally did not receive the written notice until 10:00 p.m. on March 2, 2026, several hours *after* the hearing took place.

the respondent, the immigration judge declined to consider a continuance, advising Joseph—incorrectly—that this habeas court had ordered that a bond hearing be conducted within seven days, and thus they were required to proceed with the hearing that day with or without counsel.[2] The bond hearing itself lasted only several minutes. Although Joseph had no opportunity to assemble and present any documentary evidence or witness testimony at the hearing, he verbally proffered substantial evidence in support of his position that he neither posed a danger to the community nor a flight risk.[3] In response, the government proffered no evidence beyond Joseph's federal criminal conviction for

---

[2] As noted above, our order afforded the parties a period of *twenty-one days* in which to conduct the bond hearing, mindful of the logistical challenges that a seven-day period might pose, both to the government and to the petitioner and his counsel.

[3] Joseph was permitted to speak for approximately six minutes before he was stopped by the immigration judge. Joseph pointed to his decades-long residence in the United States, his established career as a medical provider there, several court and agency findings that he was neither a flight risk nor a danger to the community, a state medical board ruling deeming him fit to continue practicing medicine despite his criminal charges, and a state family court order granting him custody of his minor child. He further pointed to his clean prison disciplinary record and to his completion of numerous rehabilitation programs while incarcerated. In his rebuttal, Joseph was permitted to speak for about one minute more, pointing out that, if released on bond, he would be subject to three layers of supervision—ICE, U.S. Probation Services, and the state medical board.

health care fraud and the removal order previously entered in his immigration case, which remained pending on appeal to the BIA. The immigration judge then denied bond, finding that, based on his criminal history and the removal order, Joseph presented a significant risk of flight. Afterward, the immigration judge issued a succinct written order summarily denying bond on the stated ground of "[f]light risk," without any further elaboration.

The respondent raises several arguments in opposition to the petitioner's motion. First, the respondent argues that a jurisdiction-stripping provision of the Immigration and Naturalization Act prevents this court from reviewing the immigration court's bond decision. Second, the respondent argues that the court is precluded from considering the instant motion because the petitioner failed to exhaust administrative remedies. Finally, the respondent argues that the petitioner received a fundamentally fair individualized bond hearing in accordance with this court's order granting his habeas petition.

**A. Jurisdiction**

The respondent first argues that this court lacks jurisdiction to review the immigration court's bond determination.

It is well established that a federal habeas court "has the inherent power to enforce its own orders." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020). More specifically, a federal habeas court retains jurisdiction to determine whether a respondent has complied with the terms of a conditional order granting habeas relief. *See Gibbs v. Frank*, 500 F.3d 202, 206 (3d Cir. 2007).

This jurisdiction, however, is subject to a statutory provision, 8 U.S.C. § 1226(e), that limits the jurisdiction of a federal court to review bond proceedings in immigration cases. Under this statute, "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court shall set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e); *see also Kegel v. Rose*, ___ F. Supp. 3d ____, 2026 WL 1018335, at *6 (E.D. Pa. Apr. 15, 2026) ("The Attorney General has delegated the authority to make these custody determinations to immigration judges under the implementing regulations.") (citing 8 C.F.R. §§ 1003.19, 1236.1).

Nevertheless, "although § 1226(e) restricts jurisdiction in the

federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." *F.M.S. v. Lowe*, No. 25-cv-02061, 2026 WL 2263555, at *5 (M.D. Pa. Aug. 6, 2026) (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)); *see also Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 Fed. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in the denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis."); *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 553 (D.N.J. 2026) ("[W]hile this Court does not have jurisdiction to review the [immigration judge's] discretionary decision to grant or deny bond, it may review whether a bond hearing was fundamentally unfair and thus violated the Due Process Clause of the Fifth Amendment." (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022)). This distinction "preserves a district court's inherent power to enforce its habeas orders by ensuring that the individualized bond hearings are not shams and otherwise comply with the detainee's due process rights." *Shonhai v. Lowe*, No. 24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026), *appeal filed*, No.

26-1566 (3d Cir. Mar. 17, 2026); *see also Zheng*, 826 F. Supp. 3d at 553 (quoting *Shonhai*).

**B. Exhaustion of Administrative Remedies**

The respondent next argues that this court lacks jurisdiction to consider the petitioner's motion because he failed to exhaust available administrative remedies—i.e., by appealing the immigration judge's order denying bond to the BIA—before bringing this motion.

We first note that administrative exhaustion is not a jurisdictional question in this case. "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted); *see also Duvall v. Elwood*, 336 F.3d 228, 230 (3d Cir. 2003) (quoting *McCarthy*). "No statute requires administrative exhaustion in habeas proceedings under § 2241." *Quispe v. Rose*, 819 F. Supp. 3d 362, 369 (M.D. Pa. 2025). Rather, "exhaustion exists as a judicially created doctrine applied at the Court's discretion." *Id.*; *see also German Santos v. Lowe*, No. 18-cv-1553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) ("[T]he exhaustion requirement imposed by courts relating to habeas corpus petitions filed by immigration detainees

is a prudential benchmark which is not compelled by statute.”).

Regardless, as our sister court has stated in a similar case,

> it is not clear that there is any exhaustion issue here at all. This is not a newly-filed habeas petition in which Petitioner seeks habeas review of the [immigration judge]'s decision denying bond. Instead, Petitioner seeks federal habeas relief from his lengthy mandatory detention under Section 1226(c). And as to that issue, the writ already has been conditionally granted. Petitioner asks this Court to review the [immigration judge]'s hearing for compliance with that Order. Accordingly, it appears that there is nothing left for Petitioner to exhaust.

*Morgan v. Oddo*, No. 24-cv-221, 2025 WL 2653707, at *3 (W.D. Pa. Sept. 16, 2025) (citation omitted).

Moreover, as we have concluded in prior cases before this court presenting similar circumstances, the respondent's argument regarding exhaustion is undermined by the fact that significant judicial resources have already been expended in this case, and the fact that this court has already concluded that Joseph's detention has become unreasonably long, meaning that any appeal to the BIA would result in further extending his already unreasonably long incarceration. *See Luciano-Jimenez v. Doll*, 543 F. Supp. 3d 69, 71 n.1 (M.D. Pa. 2021); *German Santos*, 2020 WL 4530728, at *2. Thus, we conclude that the exhaustion doctrine does not

preclude this court's consideration of the petitioner's motion to enforce.

**C. The Individualized Bond Hearing and Due Process**

Finally, the respondent argues that the bond hearing before an immigration judge provided to Joseph on March 2, 2026, was fundamentally fair, and thus complied both with due process and with this court's order granting his habeas petition.

"For a bond hearing to be fundamentally fair and comport with due process, a detainee '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her best interests.'" *Zheng*, 826 F. Supp. 3d at 555 (quoting *Ghanem*, 2022 WL 574624, at *2) (brackets omitted). "To determine whether a bond hearing was individualized, courts look first to whether the immigration judge committed plain error by misidentifying or misapplying the relevant legal precepts." *Romero v. Ogle*, No. 21-cv-01192, 2021 WL 8362027, at *2 (M.D. Pa. Nov. 12, 2021); *see also F.M.S. v. Lowe*, No. 25-cv-02061, 2026 WL 2263555, at *6 (M.D. Pa. Aug. 6, 2026) (quoting *Romero*).

> A bond hearing is individualized if it is not so arbitrary that it would offend fundamental tenets of due process.

> And if there is a discernable rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards, that suffices.

*Vasquez-Rosario v. Noem*, No. 25-cv-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026) (citation and internal quotation marks omitted); *see also Zheng*, 826 F. Supp. 3d at 555 (quoting *Vasquez-Rosario*).

> These requirements presuppose an impartial decisionmaker. They also require that the decision be grounded in the evidence presented at the hearing and accompanied by a statement indicating the reasons for the decision and the evidence relied upon. Absent such features, a bond hearing cannot satisfy the demands of due process.

*Zheng*, 826 F. Supp. 3d at 555 (citations omitted) (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)).

With respect to the second element of fundamental fairness identified by the *Ghanem* court, the Third Circuit has previously recognized that aliens in removal proceedings "have a statutory right to counsel, and a constitutional right to counsel based on the Fifth Amendment's guarantee of due process of law." *Borges v. Gonzales*, 402 F.3d 398, 408 (3d Cir. 2005) (citation omitted); *see also Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 374 (3d Cir. 2003) ("[I]t is clear that aliens have both a statutory and a constitutional right to counsel . . . ."); *Rodrigues v.*

*Brackett*, 822 F. Supp. 3d 255, 257 (D.N.H. 2026) (recognizing that a petitioner had "both a statutory and constitutional right to counsel now and at the upcoming bond hearing"). This right is further codified in the immigration regulations. *See Freza v. Att'y Gen. U.S.*, 49 F.4th 293, 298 & n.15 (3d Cir. 2022) (citing 8 C.F.R. § 292.5).

> Aliens in removal proceedings are entitled to Fifth Amendment Due Process protection, which guarantees them a fundamentally fair removal hearing. A proceeding may be fundamentally unfair if an alien is prevented from reasonably presenting his case, and we have held that the right to counsel is so fundamental to the proceeding's fairness that a denial of that right could rise to the level of fundamental unfairness. Therefore, although the Fifth Amendment does not mandate government-appointed counsel for aliens at removal proceedings, it indisputably affords an alien the right to counsel of his or her own choice at his or her own expense.

*Leslie v. Att'y Gen. U.S.*, 611 F.3d 171, 181 (3d Cir. 2010) (citations and internal quotation marks omitted); *see also Rios v. Att'y Gen. U.S.*, 615 Fed. App'x 752, 756 (3d Cir. 2015) ("The right to counsel in an immigration proceeding is limited to the right to obtain counsel at no cost to the Government."). A violation of the fundamental right to counsel so undermines the structure of the hearing that it necessarily makes the proceedings fundamentally unfair. *See Aquino v. Att'y Gen.*, 53 F.4th 761,

766 (3d Cir. 2022); *see also Robles v. Att'y Gen. U.S.*, No. 24-1963, 2026 WL 2924867, at *2 (3d Cir. Oct. 15, 2025); *Leslie*, 611 F.3d at 180–82. To paraphrase the Supreme Court, which has explained:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." We do not say that counsel must be provided at [a bond] hearing, but only that the [alien] must be allowed to retain an attorney if he so desires. Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally safeguard the interests of the [alien].

*Goldberg*, 397 U.S. at 270–71 (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69 (1932)) (citation omitted).

Here, there was no necessity for the exceptionally hasty bond hearing conducted by the immigration judge, only seven days into the twenty-one day period provided by our order conditionally granting habeas relief, leaving plenty of time for other reasonable arrangements to be made that would have permitted Joseph to be represented at the bond hearing by his privately retained counsel. *See Freza v. Att'y Gen. U.S.*, 49 F.4th 293, 299–300 (3d Cir. 2022); *Chlomos v. INS*, 516 F.2d 310, 314 (3d Cir. 1975). Moreover, even if the immigration judge and counsel for both Joseph and the government were unable to identify a mutually

convenient time within that 21-day period for a rescheduled bond hearing, the option of a motion for a reasonable extension of that time period remained available in this habeas proceeding. *See* Fed. R. Civ. P. 6(b); Fed. R. Civ. P. 81(a)(4); R. 12, 28 U.S.C. foll. § 2254.

Refusing to continue the bond hearing under the circumstances presented to permit Joseph to be represented by his retained counsel constituted a violation of his due process and statutory right to counsel. *See Freza*, 49 F.4th at 299–300; *Chlomos*, 516 F.2d at 314. This violation of Joseph's fundamental right to counsel so undermined the structure of the bond hearing conducted on March 2, 2026, that it necessarily made those proceedings fundamentally unfair. *See Aquino*, 53 F.4th at 766; *see also Robles*, 2026 WL 2924867, at *2; *Leslie*, 611 F.3d at 180–82.

## III. CONCLUSION

For the foregoing reasons, the petitioner's motion to enforce will be granted, the immigration judge's bond decision of March 2, 2026, will be vacated, and the government will be directed to provide Joseph with a constitutionally adequate individualized bond hearing before an immigration judge, at which he may be represented by counsel retained at his own expense. Our order granting this relief will require that the

bond hearing be conducted within a specified period of time, but that time period may be subject to a reasonable extension of time if necessary, whether by mutual agreement of the parties or by a motion for an extension of time filed in this habeas court, which shall be granted for good cause shown.

An appropriate order follows.

Dated: August 20, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge